THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

| | | |
|---|---|---|
| E.T. a minor  et al., | ) | |
| | ) | Case No.   1:14-cv-11892-FDS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM TO SUPPORT PLAINTIFFS'** |
| BUREAU OF SPECIAL EDUCATION APPEALS | ) | **MOTION FOR SUMMARY JUDGMENT** |
| OF THE DIVISION OF | ) | **ON COUNT ONE** |
| ADMINISTRATIVE LAW APPEALS, | ) | |
| MASSACHUSETTS DEPARTMENT OF | ) | |
| ELEMENTARY EDUCATION; | ) | |
| and | ) | |
| ANDOVER SCHOOL DISTRICT et al. | ) | |
| Defendants. | ) | |

# INTRODUCTION

Plaintiffs have filed for summary judgment and now submit this memorandum with an affidavit and its Exhibit in support thereof.

On September 30, 2013, Plaintiffs John and Jane Doe (the "Parents") , Pro Se, filed with the Bureau of Special Education Appeals ("BSEA") their Hearing Request, seeking reimbursement from Andover Public Schools (the "School" or "Andover") for their placement of their son E.T. into a local private school, the Presentation of Mary Academy (the "PMA") starting in September, 2012.

The BSEA held a hearing on December 11 and 12, 2013 ("Hearing"), denied Plaintiffs' request for the reimbursement of E.T.'s placement at PMA.

As discussed below and shown in the BSEA Administrative Records[1], the undisputed material facts establish that BSEA refused at the Hearing to give any consideration to the validity of the settlement agreement provided by Parents (the "Settlement Agreement" or "Agreement"), deemed that E.T.' private placement was Parents' unilateral decision, and excluded the Agreement from the evidence simply because it was not signed.  In addition, the Parents were denied the opportunity to testify on the communication and conduct of the School and Plaintiffs that led to the Agreement which they received from the School by email.

Where BSEA erred was that as a matter of law, a signature is not a necessity for proving the validity and enforceability of the written Settlement Agreement because the purpose of signatures is to demonstrate mutuality of consent, which can also be established through the conduct of the parties according to the established principles of contract law[2]. While a genuine issue of material fact may exist as to whether the School and Parents indeed had a "meeting of the minds" about the School reimbursing E.T.'s private placement, whether the School had breached this Agreement, and whether Plaintiffs justifiably and detrimentally relied upon the promise made by the School to pay for E.T.'s enrollment at PMA, there is no material dispute regarding BSEA's failure to make even the slightest inquiry into the conduct of the Parties related to the Agreement in order to determine the validity of the

---

[1] For ease of discussion, citations to the administrative record will be referenced as "Vol. [volume number], R. [page number]."

[2] *Presidential Motor Yacht Corp.,* 753 F.Supp. at 13; see also *Johnson v. Jung*, 2005 U.S. Dist. LEXIS 9565 (N.D.Ill. May 4, 2005) (unsigned settlement held enforceable due to meeting of minds on all essential terms).

Agreement. Instead, BSEA excluded the Agreement from the evidence and denied Plaintiffs the opportunity to testify on the matter. If BSEA had inquired into the Agreement as it should have, it may well have found that it was an enforceable contract which the School had breached, and/or that the Parents shall be reimbursed of the cost under the doctrine of promissory estoppels. Should there be need to change that private placement later, the "stay put" provision of IDEA entitles the Parents to maintaining their child's then-current educational placement at PMA, during the pendency of any administrative or judicial proceedings, unless the School and the Parents agree on an alternative placement. [3]

Furthermore, the undisputed material facts in the administrative record show that the BSEA hearing officer did not allow Parents to offer evidence at the Hearing to prove that E.T.'s enrollment at PMA was not unilateral and based her decision not only on the lacking of signatures on the Agreement, but also on her mistaken belief that the communication and conduct of Parents and the School surrounding the Agreement must be kept confidential and therefore irrelevant. However, Federal Rule of Evidence 408, which governs admissibility of settlement-related evidence, does not exclude the evidence which Parents tried to introduce because of the exceptions of the rule. If BSEA had admitted Parents' evidence at the Hearing, it may have once again found that the decision to enroll E.T. at PMA was not a unilateral decision. And therefore the School shall be required once again under the principles of contract law,

---

[3] 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).

the doctrine of promissory estoppel, and the "stay put" provision of IDEA to fund

E.T.'s then current educational placement at PMA.

Finally, even if no agreement nor negotiation had ever taken place, and no

promise was ever made by the School to Plaintiffs about funding E.T.'s study at PMA

that Plaintiffs had detrimentally relied upon,  under 20 U.S.C. 1412(a)(10)(c)(ii) and

34 C.F.R. § 300.148(c) the School is nevertheless required to reimburse the cost of

E.T.'s private placement by his parents when Free Appropriate Public Education

("FAPE") was undisputedly at issue, as it was indeed in this case, even if such

enrollment decision was unilateral without the School's consent or referral, and even

if the private placement did not meet the State standards that apply to education

provided by BSEA. [4] BSEA has failed to give any consideration of this statute under

Individuals with Disabilities Education Act ("IDEA") at the Hearing.

Therefore, the Plaintiffs are entitled to relief under 20 U.S.C. 1412(a)(10)(c)(ii),

34 C.F.R. § 300.148(c), the principles of contract, the doctrine of promissory

estoppels, and 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).

## UNDISPUTED MATERIAL FACTS

1.   Plaintiff E.T., a minor with special needs, attended the Wood Hill Middle

School in Andover School District beginning in 2009 and graduated in June, 2012.



---

[4] 20 U.S.C. 1412(a)(10)(c)(ii),  34 C.F.R. § 300.148(c).

2.     During the three years when E.T. studied in the Andover Public Schools ("Andover" or "School"), Plaintiffs disagreed with the School over the Individual Education Plan ("IEP") plan and other treatments the School adopted on E.T.

3.     On April 12, 2012, the School filed a request for a hearing with BSEA, seeking to remove E.T. from the Andover School District and place him in a separate private therapeutic day school placement, namely, the Gifford School.

4.     Plaintiffs opposed and requested to have E.T. remain in the Andover School District.

5.     A BSEA hearing on E.T.'s future placement was scheduled to be held on August 15, 16, and 17, 2012, during the school summer vacation.

6.     At the three-day hearing, attorney Catherine Lyons ("Ms Lyons") represented the Andover School District, and Parents represented E.T. and themselves pro se.

7.     Andover Public School's new session was to start on September 6, 2012.

8.     There were discussions and negotiations between the School and Plaintiffs in August and September, 2012 regarding an agreement to place E.T. outside the Andover School District, (Vol. II, R.22) and a written Settlement Agreement (the "Agreement") had been drafted by the School and emailed to the Parents. In this Agreement, the School shall reimburse Parents for the cost of E.T.'s placement at a private out of district school. (Vol. I, R. 366-374)

9.    On the first day of the 2012-2013 school year in Andover, E.T. did not attend the Andover High School as a freshman. He had instead enrolled in a local private school, the Presentation of Mary Academy ("PMA") and still is a student there.

10.    On September 11, 2012, the School rescinded what was offered in the Agreement to pay for E.T.'s attendance at PMA.

11.    On September 11. 2012, BSEA issued its order that "Within thirty calendar days from the date of this Decision, the Andover Public Schools shall locate or create a placement designed for highly intelligent students with Asperger's Syndrome and similar disorders, and shall fund Student's placement in such program. " See BSEA #12-7315 (the "BSEA Decision #1").

12.    Both the School and Plaintiffs appealed the BSEA Decision #1 to this Court, and the two cases were consolidated into case #1:12 cv 12288 DPW. Parents represented E.T. and themselves pro se in the appeal.

13.    On November 21, 2013, the Court's issued its Decision (the "Court Order"). Judge Woodlock wrote at the end of his ruling that affirmed BSEA Decision #1:

> "*I am compelled to observe, however, that all parties may wish to leave their seemingly intractable and rigid formal positions with a bit of common sense and practicality as they go forward. To be sure, Andover has demonstrated for now it cannot provide FAPE for the student at Andover High School; yet it had been willing to fund a very expensive alternative at The Gifford School, which for now has not been demonstrated to provide the student with FAPE either. For their part, the Parents and the Student seem to be intent on demonstrating, as much for perceived dignitary reasons as for educational ones, that the student should not be excluded from*

> *Andover High School. Meanwhile, the Student appears from the limited information provided to be flourishing in his current parochial school.*
>
> *it might be appropriate for all parties to return to core principles and explore whether the Student's current, less expensive, placement may be providing – the trend of professional thinking in this area to the contrary notwithstanding – a fair and appropriate education for the Student which consequently can properly be publicly funded.*" (Case 1:12-cv-12288-DPW, page 41-42)

14. Plaintiffs rejected the private placements recommended by Andover either because that they did not consider them the appropriate schools for "highly intelligent students" like E.T., or that the recommended schools had rejected E.T. previously.

15. Plaintiffs asked Andover to instead either fund E.T.'s study at PMT, the then current school he was attending, or created an appropriate program within Andover for E.T. to enroll.

16. Eventually Plaintiffs filed a Request for Hearing at BSEA on September 30, 2013, stating that School had not been in compliance with the BSEA Decision #1 and the Court Order, and requested for relief that the School reimburse them for the cost of E.T's private placement at PMA.

17. At the BSEA hearing held on December 11 and 12, 2013 (the "BSEA Hearing" or "Hearing"), Ms Lyons represented the Andover School District, and Parents represented E.T. and themselves pro se.

18.   At the Hearing, Plaintiffs included in their exhibitions the Settlement Agreement communicated from the School to Parents within the month prior to the issuance of BSEA Decision #1on September 11, 2012.

19.   The BSEA hearing officer from the early on deemed that Parents "unilaterally" placed the Student in a private education school and sought relief to have the School pay for such placement. (Vol. II, R.5)

20.   The BSEA hearing officer excluded the Settlement Agreement because it was unsigned, and deemed that an agreement did not exist between the School and Parents regarding. (Vol. II, R.23-25)

> E.T.'s Father: *This must be included in this record exhibits from parents. This very important.  I say one more time – I already expressed how important it was. This show you how Andover doing about this. They agreed to us. They take it back – this agreement. They just – that's why I just put it in here. That's the most important piece of evidence for us.*
>
> Hearing Officer: *… I am not going to include this agreement in the record because it is an unsigned agreement…*
>
> *Legally, there was either a settlement or there wasn't. If there was not – if there were settlement negotiations that took place, those are generally confidential and only become relevant if a settlement actually happened.*
>
> Ms. Lyons: *And it did not.*
>
> Hearing Officer: *And it did not…If there was a settlement, in fact – in other words, a signed and executed agreement – then that's relevant, regardless of what led up to it. It does not matter what led up to it.*
>
> *If there's not an agreement, in fact, then what happened in terms of attempting to discuss an agreement – it may be relevant as to the parties' relationship with each other but it's not relevant as to my decision one way or the other.*

*"... I can only consider a settlement agreement if it's made – if it's executed if it's signed. Okay?"* (Vol. II, R.27)

21.   The BSEA hearing officer did not allow Parents to testify on the

communications between the School and Parents and the conduct of the Parties

surrounding the Settlement Agreement. (Vol. II, R. 25-27)  She essentially excluded

the Settlement Agreement as a part of the record, and then used this exclusion as her

basis to disallow Plaintiffs to offer evidence to prove that the Settlement Agreement

was enforceable and should be included in the record:

> Hearing Officer: "*Okay. But the question is – how is that relevant to the school's compliance with the decision?*"
>
> Father:   "*... the processes start when we had agreement and, at the end, like, they breached their agreement. We cannot stop the process – already processed. We were forced to – to keep going on.*"
>
> Hearing Officer:  "*Okay.*"
>
> Father: "*So that order – your order – gave the order in September 11th. This agreement is September 6.*"
>
> Hearing Officer: "*Where does it say that*?"
>
> Father: "*The Agreement –*"
>
> Hearing Officer: "*September 6th?*"
>
> Father: "*September 6th – before the decision.*"
>
> Father: "*Before the decision so that means that the school and us ... (indiscernible) enroll ... my son... Both school and us agreed to enroll the student into the PMA – the private school.*"
>
> Hearing Officer:  "*... All kinds of – your negotiations – the parties' negotiations – were not on the record did not form the basis of any decision.*"

> *They were a process that happened outside of that hearing process and outside that decision process. There's no record of it.*
>
> *... I can only consider a settlement agreement it's made – if it's executed, if it's signed. Okay?"*

22.  The BSEA Hearing Officer stated that if there was a settlement agreement then it would be relevant for her to decide on the issue. And she relied solely on the fact that there was no signature on the settlement agreement to render her decision that "the agreement never happened".  (Vol. II, R. 27).

> Hearing Officer: "*If the agreement had been signed and you had an agreement and then came in here and said, 'Wait a minute – we had this settlement agreement and the District is now saying – and we executed that before your decision issued and the District is now saying, 'Oh, we don't have to abide by this because a decision came and said something else', you'd be in a different position. But the agreement never happened. Okay?"*

23.  The BSEA hearing officer interrupted Father's testimony on the conduct of the Parties and the circumstances surrounding the Agreement, and instead assumed that there was not a meeting of mind before receiving any evidence. (Vol. II, R.27-28)

> Hearing Officer: "*The fact that – it sounds like what you're alleging that you're going to demonstrate is that you relied upon what you thought was going to be an agreement and that you relied on that and then the agreement didn't happen and you're dissatisfied with that. I understand what it is you're saying; however, that's not legally relevant here. The only thing that's legally relevant here is whatever negotiations you may have had at any point in time did not result in a settlement agreement and because it did not result in an agreement, a proposed agreement or a draft agreement, or, you know, whatever else might be in there, is not going to be relevant to anything I'm discussing – on anything I need to rule on here.*"

24.  The BSEA hearing officer made no inquiry into the fact surrounding the communication and conduct of the Parties to determine the possibility of the



meeting of mind. She presumed without basis that what Father was going to testify

about the Settlement Agreement was merely his dissatisfaction with the negotiation

process instead of evidence showing that actual agreement had come into existence

and that the School had indeed made a promise that Plaintiffs relied upon. The

hearing officer treated her presumptions of such as facts. (Vol. II, R.28) (Hering

Officer: "*The fact that you're not satisfied with your experience of negotiating with*

*Andover is – I', not disputing that but there's nothing I can really do about that here.*

*What I deal with here is was there an agreement? No.*")

25.   BSEA issued its decision on January 21, 2014, denying Parents' requests for

relief. BSEA No. 1402742. (the "BSEA Decision #2")


## ARGUMENT

A. **Standard of Review**

The embodiment of a policy of the federal judiciary favoring efficient

resolution of disputes, summary judgment is appropriate in cases under the IDEA.


In deciding a motion for summary judgment, the court must decide whether

there is a genuine issue of material fact and then inquire into whether the moving

party is entitled to summary judgment as a matter of law. F.R.C.P. Rule 56(e); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322; 106 S. Ct. 2548, 2552; 91 L. Ed. 2d. 265 (1986).

Once the moving party has carried its burden of establishing the absence of a genuine



issue of material fact, however, "its opponent must do more than simply show that

there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356; 103 L. Ed. 2d 866 (1986). Thus, if the non-movant's evidence is "merely colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511; 91 L. Ed. 2d. 202 (1986).

Numerous circuit and district courts have granted summary judgment motions in cases involving IDEA. In fact, "[n]othing in the language or legislative history of the EHA [IDEA] precludes a court from deciding appeals on the basis of summary judgment." *Vander Malle v. Ambach*, 667 F. Supp. 1015, 1033 (S.D.N.Y. 1987), modified on other grounds, 667 673 F.2d 49 (1982; see also *Victoria L. By Carol A. v. District School Board of Lee County, Florida,* 741 F.2d 369, 372-373 (11th Cir. 1984).

Like many other IDEA cases, in the instant case, the court has the authority to grant summary judgment in any and all issues where the court finds no genuine issue of material fact exists.

**B**. **BSEA erred in excluding the evidence of the unsigned Settlement Agreement and other related testimony from Plaintiffs at the Hearing, and thus deprived Plaintiffs' rights to obtain remedy for their contractual rights and/or detrimental reliance under the doctrine of promissory estoppel.**

B.1. Case law has established that a signature is not a necessity for proving the validity and enforceability of the written Settlement Agreement because the purpose of signatures is to demonstrate mutuality of consent, which can also be established through the conduct of the parties.



It is a well-established principle of contract law that a signature is not a necessity for proving the existence of an enforceable contract because its purpose is to demonstrate mutuality of consent, which can also be established through the conduct of the parties. *Presidential Motor Yacht Corp.*, 753 F.Supp. at 13; see also *Johnson v. Jung*, 2005 U.S. Dist. LEXIS 9565 (N.D.Ill. May 4, 2005) (unsigned settlement held enforceable due to meeting of minds on all essential terms). Therefore, when a written settlement agreement is missing a signature, the issue becomes whether the absence of signature, together with the conduct of the parties, demonstrates the lack of an agreement. *Id.*

Decisions in Massachusetts state and federal courts in recent years have too established that email conversations are weighty enough, for example, to satisfy the statute of frauds and make an unsigned purchase and sale agreement enforceable, and bind parties to a settlement agreement that had yet to be formally executed. In *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza Inc., et al*., 863 F.Supp.2d 122 (D. Mass. 2012), the Court ruled that an informal email exchange between the opposing parties was sufficient to constitute a binding settlement agreement.

In this Plaintiffs' Motion for Summary Judgment, the issue is beyond whether the conducts of the Parties (Plaintiffs and Andover School District) and the unsigned Settlement Agreement are sufficient to demonstrate the mutuality of consent and thus prove the existence and enforceability of the Agreement, which they are if the

evidence could be introduced. Instead the issue is whether BSEA has ever examined the conduct of the Parties at all to determine whether the Settlement Agreement Plaintiffs offered into evidence may be a valid and enforceable contract despite without signatures. The undisputed material facts in the BSEA Administrative Record clearly show that BSEA has failed to do so at the Hearing. The BSEA hearing officer dismissed Plaintiffs' assertion that there had been an agreement, denied Plaintiffs the opportunity to offer evidence regarding the validity of the Settlement Agreement and the possibility of meeting of minds of the Parties, all simply because of the absence of signatures on the Agreement. (Vol. II., P23-28)

If BSEA had inquired into the Agreement instead of dismissing it entirely because the Agreement was not signed, there would at least be possible for it to have found that the Settlement Agreement was an enforceable contract which the School had breached, and that any later dispute regarding E.T's placement, should there needed to be changed with a bilateral decision, would fall under the "stay put" provision of IDEA, which entitles Parents to maintaining E.T.'s then-current educational placement at PMA during the pendency of any administrative or judicial proceedings, unless the educational agency and the parents agree on an alternative placement. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).

B.2. <u>The doctrine of promissory estoppel was not, but should have been, applied at the BSEA Hearing to determine whether Plaintiffs had detrimentally relied upon any promise made by the School even if there were not a written</u>



<u>Settlement Agreement before the School rescinded its offer and withdraw its
promise to reimbure E.T.'s placement at PMA.</u>

Even if without a written contract, an oral promise which the promissor should
reasonably expect to induce either action or forbearance on the part of the promisee is
enforceable when injustice can be avoided only by enforcing the contract. See
Restatement (Second) of Contracts § 217A.  In *McIntosh v. Murphy, 52 Haw. 29, 469
P.2d 177 (Haw. 1970)*, the court held that if a party has relied on an oral promise and
rendered part performance, the other party should be estopped from asserting the
Statute of Frauds. Also see *Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc.:* 22 Ill.307
N.J. Super. 461, 704 A.2d 1321 (Super. Ct. App. Div. 1998), the court held for
plaintiff under promissory estoppel, applying a relaxed standard regarding the
requirement that there be a "clear and definite promise" when defendant gave
assurances that it would lease space for a yogurt shop to the plaintiff. Plaintiff
terminated its lease in another location and sued when defendant withdrew its offer. *Id.*

Plaintiffs in the present case tried to offer evidence at the BSEA hearing that
they had relied upon the verbal agreement reached with the School and the Settlement
Agreement received from the School later, and acted upon on the School's verbal
consent and promise to fund E.T.'s placement at PMA. See Affidavit and Exhibit A. If
BSEA had allowed Parents to testify on these facts at the Hearing, it may well have
found that the doctrine of promissory estoppels would support that the Plaintiffs
justifiably relied upon the promise made by the School and was entitled for the relief

they sought. By not allowing Plaintiffs to testify on the circumstances of the

negotiation and discussion with the School about the promise that the School made,

which led to the Settlement Agreement, BSEA wrongfully deprived Plaintiffs' rights

for relief, under both the promissory estoppels and the IDEA "Stay Put" provision,

which enables Parents to maintain E.T.'s then-current educational placement at PMA

during the pendency of any administrative or judicial proceedings and the School shall

fund such placement, unless the educational agency and the parents agree on an

alternative placement. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).

> B.3. <u>Rule 408 exclusion on settlement related evidence does not apply to the
> Settlement Agreement in the present case because of the Rule 408 exceptions
> on the admissibility of certain evidence and also because settlement-related
> evidence is admissible when a dispute arises over a completed settlement
> agreement.</u>

Federal Rule of Evidence 408, which governs admissibility of settlement-

related evidence, excludes such evidence only in certain circumstances: to prove the

validity of a claim, to impeach a prior statement, or as a contradiction. Moreover, Rule

408 expressly allows the use of settlement-related evidence for purposes other than

proving the validity or invalidity of the claim or its amount, or impeachment by a

prior inconsistent statement or a contradiction. More specifically, the rule also does

not apply when the "claim" that is the subject of the settlement discussion is

undisputed. *Weems v. Tyson Foods, Inc.,* 665 F.3d 958, 965 (8th Cir. 2011).

Conversely, where a party does not dispute a claim, such as where the validity of a



monetary claim and the amount due are admitted, Rule 408 does not bar evidence relating to the concessions or any offer to pay. See *Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1353–55 (11th Cir. 2011) (upholding district court's decision to admit evidence that defendant acknowledged his responsibility to pay debt owed to plaintiff).

Furthermore, settlement-related evidence is admissible when a dispute arises over a completed settlement agreement. For example, where a party repudiates or breaches a settlement agreement, the agreement itself and any relevant settlement negotiations may be admitted to prove the contract claim. See *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293–94 (2d Cir. 1999).

In the present case, Plaintiffs' introduction of the evidence of the Settlement Agreement at the BSEA Hearing shall be allowed by Rule 408 exception because this evidence was not offered to either prove or disprove the validity or amount of any disputed claim, or to impeach by a prior inconsistent statement made by the School. There had been no dispute at the time between the Parties that the School had failed to provide FAPE to E.T. See BSEA Decision #1. Neither had there been any dispute that the School shall pay for E.T.'s education at an out of district private school should Plaintiffs and School had consented to enrolling E.T. in that private school. Plaintiffs attempted to introduce this Agreement and the related communication and conduct as a new and independent claim that there had been "a meeting of mind" on E.T.'s placement at PMA, and that the School had consented and made promise to reimburse

Parent for the cost of such placement. Therefore, Plaintiffs' testimony should not have been barred at the Hearing.

**C. Under the IDEA, Parents are entitled to reimbursement of the private placement even if it is their unilateral decision, because the School had not made FAPE available to their child in a timely manner prior to that enrollment.**

The IDEA statute explicitly states : "if the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. 1412(a)(10)(c)(ii); 34 C.F.R. § 300.148(c).

In the present case, there had been no disputed material facts that the School admitted, and was also found by BSEA in BSEA Decision #1, that it was not capable of  providing FAPE to E.T. Based on this fact along with other evidence provided by Parents at the Hearing regarding E.T.'s successful performance at PMA, the BSEA hearing officer should have found for Plaintiffs and ordered the School to reimburse the Parents for the cost of E.T.'s private placement according to the IDEA statute.



## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court to grant there motion for summary judgment on Count One as follows:

1. Vacating the BSEA Decision #2 dated January 21, 2014;

2. Declaring that Plaintiffs are entitled to be reimbursed the tuition, transportation, and other related costs for the E.T. to have attended the out of district private school since September 2012;

3. Declaring that Andover Public Schools failed to comply with the September 11, 2012 BSEA Decision #1 that it shall locate or create for the Student a placement designed for highly intelligent students with Asperger's Syndrome and similar disorders for E.T. within 30 calendar days and shall fund such placement; or

4. Alternatively, granting Plaintiffs the permission to either amend their Complaint with new claims against Andover Public Schools regarding the breach of contract that shall bind the School to reimburse E.T.'s private placement at PMA, or initiate a separate action for such claims against the Andover Public Schools.

This 16th day of October, 2015                Respectfully submitted,

                                              Plaintiffs
                                              By their attorney,

                                              By:  /s/ Lei Zhao Reilley
                                              Lei Zhao Reilley, BBO# 674373



130 Pine Street
Newton, MA 02466
Tel: (617) 299-6627
Email: leizhaolaw@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 16th day of October, 2015 electronically filed the within and foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification.

By: /s/ Lei Zhao Reilley
Lei Zhao Reilley

